UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FREDERICK LEE KNOCHEL, III, and
FAMILY CHIROPRACTIC & WELLNESS
OF MIDLAND, PLLC,

                    Appellants,                          Case No. 1:23-cv-11996

v.
                                                         Honorable Thomas L. Ludington
JULIE RONAN                                              United States District Judge

                    Appellee.
_____/

**OPINION AFFIRMING BANKRUPTCY COURT**

From 2014 through 2016, Julie Ronan worked as a receptionist for Dr. Frederick Knochel

at his chiropractic practice in Midland, Michigan. Throughout her near two-year tenure working

for Dr. Knochel, Ms. Ronan alleged he subjected her to sexual harassment. What began as sporadic

comments about Ms. Ronan's weight and physical appearance escalated to unsolicited invitations

to attend sex parties, nonconsensual massages, and unsolicited pornographic images placed on Ms.

Ronan's work computer. This hostile conduct came to a crescendo in 2016 when Dr. Knochel

forced Ms. Ronan to attend an out-of-state work conference and hid the fact that he only reserved

one hotel room. On the first day of the conference, as Ms. Ronan attempted to find other

accommodations, she found Dr. Knochel lying in bed with his shirt off, pants undone, and wearing

no undergarments.

Ms. Ronan quickly left Dr. Knochel's employ, and sued him and his practice—Family

Chiropractic & Wellness of Midland, PLLC—in state court for creating a sexually hostile

workplace. The case went to trial, and the jury found for Ms. Ronan. When the dust of the state

appellate proceedings settled, Ms. Ronan had secured a $267,414.85 judgment against Dr. Knochel

and his practice. But Dr. Knochel and his practice soon after initiated Chapter 7 bankruptcy proceedings in the United States Bankruptcy Court for the Eastern District of Michigan. So Ms. Ronan initiated adversarial proceedings seeking, among other forms of relief, an order that her state court judgment was nondischargeable under Section 523(a)(6) of the Bankruptcy Code, which exempts from discharge any debts arising from "willful and malicious" injuries.

On June 30, 2023, the Bankruptcy Court resolved the Parties' cross-motions for summary judgment, ruling in favor of Ms. Ronan and holding that the state court judgment is nondischargeable because Dr. Knochel willfully and maliciously harassed her. Dr. Knochel filed a timely appeal with this Court. As explained below, this Court affirms.

## I.

### A.

Dr. Frederick Knochel, III, is the sole owner of Family Chiropractic & Wellness of Midland, PLLC ("Family Chiropractic"), a chiropractic practice in Midland, Michigan. ECF No. 3 at PageID.19. Appellee Julie Ronan worked as a receptionist at Family Chiropractic from late 2014 through early 2016. *Ronan v. Fam. Chiropractic & Wellness of Midland, PLLC*, No. 352706, 2021 WL 2025182, at *1 (Mich. Ct. App. May 20, 2021).

In 2018, Ronan sued Dr. Knochel and Family Chiropractic in the 42nd Circuit Court for Midland County, alleging Dr. Knochel sexually harassed and discriminated against her by creating a hostile work environment in violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MICH. COMP. LAWS. § 37.2101 *et seq. See id.*; ECF No. 3 at PageID.20; *see also Ronan v. Family Chiropractic & Wellness of Midland, PLLC*, Case No. 18-5224-CZ-B (42 Cir. Midland County, Mich., 2018). The case went to trial in June 2019. *Id.* All Parties agree that the following facts, as

recited by the Michigan Court of Appeals, accurately describe the evidence presented at trial. *See*

*In re Knochel*, No. 22-20911-DOB, 2023 WL 4306262, at *1, 6 (Bankr. E.D. Mich. June 30, 2023).

> Multiple witnesses testified that Knochel made demeaning comments about women when he was at work and often judged and remembered women by their appearance. [Ronan] testified that Knochel would make unflattering comments regarding her weight and figure. On one occasion, Knochel referenced the size of her arms by "flapping [] bat wings at [her]." [Ronan] was proud of her appearance, but[] was self-conscious about her arms. She told Knochel this, but he "continued going" until [Ronan] excused herself and went outside to cry. [Ronan] testified that when she lost some weight, Knochel told her that she "was a two or three before, [but was] a five or six now," apparently rating her appearance on a scale of 1 to 10.
>
> Knochel continuously introduced sexual conversation at the office. For example, Knochel told [Ronan] he was involved in a swinger's community and he sent her an e-mail invitation for a swinger's party, which she declined. [Ronan] testified that Knochel would often joke about how he did not wear underwear because he needed to "give his balls room to breathe." [Ronan] testified that Knochel asked her to call a patient who worked for the local health department to bring condoms for him to her appointment. [Ronan] initially refused, but she made the call after Knochel insisted. When the patient arrived with the condoms, Knochel told [Ronan] and the patient that "the small ones weren't gonna fit."
>
> Knochel's behavior went beyond comments. [Ronan] testified that she once returned from a lunch break and heard Knochel having sex in the office. She said that the receptionist from the adjacent office in the building asked her to address the situation because their patients heard the sexual encounter. Knochel would also leave explicit pictures on [Ronan's] work computer. Ronan arrived to work one day to find photographs of the woman Knochel was seeing, in various states of undress, on her work computer. On another occasion, Knochel saved a picture of a vagina as the desktop home screen to [Ronan's] work computer. [Ronan] said that she repeatedly complained to Knochel about his behavior, and he would stop for a time, but "then when it happened again, it escalated."
>
> Knochel would ask [Ronan] to give him massages, including rubbing his lower back. [Ronan] testified that on one occasion, Knochel was lying on his stomach and he "wanted me to do his back and go lower down or, 'Oh, right there.'" As "it became more and more," [Ronan] told Knochel that she "didn't want to touch him." [Ronan] also recalled a time when Knochel ripped a seam in his pants, and he asked her to staple them while he was wearing them even though his "butt cheeks were exposed." [Ronan] suggested that Knochel take the pants off but, after he insisted, she stapled the back of the pants while he had them on.
>
> A business conference in Atlanta ended up being the proverbial final straw. [Ronan] told Knochel she would not be able to attend the conference with him because her

daughter had a cheer competition, but Knochel told her she was going to the conference. Knochel initially told plaintiff they would be sharing a room to save money, but after [Ronan] expressed her discomfort, Knochel assured her that the hotel room would be a suite with two separate bedrooms. After arriving at the hotel, however, [Ronan] learned that Knochel booked one room with two beds rather than a suite. After the front desk told [Ronan] there were no other rooms available at the hotel, [Ronan] returned to the room, thinking that Knochel was at the conference. Instead, she found him sleeping on the bed with his shirt off and pants undone and it did not appear he was wearing underwear. [Ronan] was upset and screamed at Knochel to wake up. He, in turn, became very upset and called [Ronan] "a stupid fucking cunt" and told her she was being paid for the weekend, so she "was gonna do whatever he told me to do." [Ronan] testified that she went down to the lobby and called her aunt, Ruth Rivette, who changed her flight. Ruth testified that [Ronan] was "hysterical" and that she was "terrified" of Knochel. [Ronan] testified that she "cried on the plane all the way home" and decided to leave her job. Soon after the trip, [Ronan] scheduled a meeting with Knochel to discuss why he booked only one hotel room. [Ronan's] then husband . . . accompanied her to the meeting because she was afraid to be alone with Knochel. [Ronan] turned in her keys after Knochel refused to meet[.]

*Ronan*, 2021 WL 2025182, at *1–2 (footnote omitted).

On June 27, 2019, the jury found both Dr. Knochel and Family Chiropractic liable for creating a hostile work environment based on gender in violation of the ELCRA, and awarded Ronan $150,000 in noneconomic damages. *Id.* at *2; *see also* ECF No. 3 at PageID.20, 54. On September 4, 2019, after post-trial motion practice, the 42nd Circuit Court issued a judgment against Dr. Knochel and Family Chiropractic in the amount of $243,739.71. ECF No. 3 at PageID.20. Dr. Knochel and Family Chiropractic appealed, but in May 2021, the Michigan Court of Appeals affirmed. *Ronan*, 2021 WL 2025182, at *3–4. On July 1, 2021, the Michigan Court of Appeals granted Ronan's motion to remand the case to the 42nd Circuit Court for consideration of appellate attorney fees, and later that month, Plaintiff was awarded an additional $11,310.00. ECF No. 3 at PageID.20–21. Accordingly, on August 10, 2021, the 42nd Circuit Court issued an

amended judgment (the "State Court Judgment") against Dr. Knochel and Family Chiropractic, in the amount of $267,414.85.[1] *Id.* at PageID.51–52.

But, ten days later, Ronan filed another complaint in the 42nd Circuit Court alleging Dr. Knochel fraudulently transferred real estate and redirected his income and Family Chiropractic's income to avoid paying the State Court Judgment. *Ronan v. Knochel*, Case No. 21-8049-NZ (42 Cir. Midland County, Mich., 2021). Specifically, Ronan alleged that Dr. Knochel (1) transferred a $15,500 residence to his then-girlfriend, Cynthia Lincoln, while the state court sexual harassment proceedings were pending; (2) transferred a $50,000 residence to The Tom McCann Family, LLC, while the state court sexual harassment proceedings were pending, within 30 days of the jury's verdict; and (3) diverted Family Chiropractic's patients and income to Relief Care Chiropractic of Midland, PLLC ("Relief Care"), a new chiropractic practice that Dr. Knochel created just six days after the jury's verdict. ECF No. 3 at PageID.22–23.

On September 16, 2022, Dr. Knochel filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court"). *In re Knochel, III*, Case No. 22-20911-DOB (Bankr. E.D. Mich. Sep. 16, 2022). Randal L. Frank was selected to serve as the Bankruptcy Trustee, responsible for representing Dr. Knochel's creditors—like Ms. Ronan—and equipped with "extraordinary" powers to collect and preserve Dr. Knochel's assets for subsequent liquidation. *See id.*, ECF No. 6; *In re Fordu*, 201 F.3d 693, 706 (6th Cir. 1999); *see also In re Arnold,* 176 B.R. 13, 15 (Bankr. E.D. Tex. 1995) (explaining that Chapter 7 trustees have

---

[1] This amended judgment included $150,000 in noneconomic damages; $79,525 in trial attorney's fees; $1,264.18 in trial costs; $12,950.53 in interest on the original judgment (through September 2019); $2,500 in post-judgment motion practice attorney's fees, $11,310 in appellate attorney's fees; and additional $9,865.14 in interest under MICH. COMP. LAWS § 600.6013(8). ECF No. 3 at PageID.52.

a duty to achieve the "desired end result" of proceedings: an equitable distribution of the estate's assets to creditors).

On December 1, 2022, Ms. Ronan removed her fraudulent transfer case from the 42nd Circuit Court to the Bankruptcy Court under 11 U.S.C. § 1452(a), initiating adversarial proceedings. *Id.*, ECF No. 33; *see also Ronan v. Knochel*, Case No. 22-20236-DOB (Bankr. E.D. Mich. Dec. 1, 2022). In Counts I through III of her amended complaint, Ms. Ronan—as Dr. Knochel's creditor—sought to void Dr. Knochel's alleged fraudulent transfers under the Michigan Uniform Voidable Transactions Act, MICH. COMP. LAWS § 566.31 *et seq*. *See* ECF No. 3 at PageID.23–29. In Count IV, Ronan sought to pierce Relief Care's corporate veil. *Id.* at PageID.29–31. In Count V, Ronan sought an order from the Bankruptcy Court that, under 11 U.S.C. § 523(a)(2)(A), the funds Dr. Knochel received from his allegedly fraudulent transfers were nondischargeable. *Id.* at PageID.32–33. Similarly, in Count VI, Ronan sought an order from the Bankruptcy Court that the State Court Judgment was a nondischargeable debt arising from a "willful and malicious injury" under Section 523(a)(6) of the Bankruptcy Code, 11 U.S.C. § 523(a)(6). *Id.* at PageID.33–34.

In February 2023, the Bankruptcy Court dismissed Counts I through IV, and in April 2023, the Parties voluntarily dismissed Count V. *See Ronan v. Knochel*, No. 22-02036-DOB (Bankr. E.D. Mich. 2022), ECF Nos. 18; 60. All that remained was Count VI—Ronan's claim that the State Court Judgment was a nondischargeable debt arising from Dr. Knochel's "willful and malicious" harassment and discrimination under Section 523(a)(6). The Parties filed cross-motions for summary judgment on this remaining claim in April 2023. *See* ECF No. 3 at PageID.36–49 (Knochel's motion), PageID.60–91 (Ronan's motion). To understand the Bankruptcy Court's

resolution of this claim and the basis for Dr. Knochel's appeal, some brief background about debt discharge, and the exception codified at Section 523(a)(6), is in order.

**B.**

Chapter 7 bankruptcy proceedings offer debtors like Dr. Knochel "a fresh financial start." *In re Berge*, 953 F.3d 907, 913 (6th Cir. 2020). "To achieve that fresh start," once the Bankruptcy Trustee has collected and liquidated the debtor's assets, "the Bankruptcy Code allows the debtor to discharge" remaining debts owed to creditors. *Id.*; *see also* 11 U.S.C. § 704. Although most debts are dischargeable, the Bankruptcy Code carves out "limited exceptions" to this "general rule." *Id.*; *see also F.C.C. v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 306 (2003) (noting nondischargeable debts are "clearly disfavored by the Bankruptcy Code"). Relevant here is one such exception, codified at Section 523(a)(6) of the Bankruptcy Code, which provides that debts arising from "willful and malicious" injuries are nondischargeable. 11 U.S.C. § 523(a)(6). But "the two terms are not synonymous." *In re Berge* 953 F.3d at 915. Accordingly, as recently emphasized by the Sixth Circuit, reviewing courts must take a "two-pronged approach" when assessing debt discharge under Section 523(a)(6). *Id.* at 914.

First, the creditor's injury must have been willfully inflicted by the debtor. "[R]ecklessly or negligently inflicted injuries" will not do. *Kawaauhau v. Geiger*, 523 U.S. 57, 64 (1998). Instead, the debtor must either (1) subjectively "desire[] to cause the consequences of his act," or (2) "believe[] that the consequences are substantially certain to result from it." *In re Markowitz*, 190 F.3d 455, 464 (6th Cir. 1999) (internal quotations omitted); *see also Yeager v. Wilmers*, 553 B.R. 102, 107 (S.D. Ohio 2015), *aff'd* (July 19, 2016) ("A 'willful' injury requires 'a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.'" (quoting *Kawaauhau*, 523 U.S. at 61)).

- 7 -

Second, the creditor's injury must have been maliciously inflicted by the debtor. Unlike willfulness, a finding of malice does not require ill-will or specific intent. *In re Trantham*, 304 B.R. 298, 308 (B.A.P. 6th Cir. 2004). Instead, a debtor acts maliciously by acting "in conscious disregard of [their] duties or without just cause or excuse[.]" *Id.* (quoting *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir.1986)). A "just cause" is defined as a "'legally sufficient reason'" and a "just excuse" is defined as a "'reason that justifies an act or omission or[] relieves a person of a duty.'" *In re Berge*, 953 F.3d at 915 (quoting BLACK'S LAW DICTIONARY (11th ed. 2019)).

To exempt a debt from discharge under Section 523(a)(6), creditors like Ms. Ronan bear the burden of proving both willfulness and maliciousness by the preponderance of the evidence. *In re Trantham*, 304 B.R. at 306. And although courts must analyze these two elements separately, the same facts and evidence may support them. *In re Berge*, 953 F.3d at 916; *see also In re Martin*, 321 B.R. 437, 442 (Bankr. N.D. Ohio 2004) ("[I]n a great majority of cases, the same factual events that give rise to a finding of 'willful' conduct, will likewise be indicative as to whether the debtor acted with malice.")

## C.

The Bankruptcy Court entertained oral argument on the Parties' cross-motions for summary judgment on June 13, 2023. *See In re Knochel*, 2023 WL 4306262, at *4. On June 30, 2023, United States Bankruptcy Judge Daniel S. Opperman denied Dr. Knochel's motion, granted Ronan's motion, and held that the State Court Judgment is a nondischargeable debt under § 523(a)(6). *See id*; *see also Ronan v. Knochel*, No. 22-02036-DOB (Bankr. E.D. Mich. 2022), ECF No. 91. The Bankruptcy Court's rationale was twofold.

First, the Bankruptcy Court concluded that the doctrine of collateral estoppel—also known as issue preclusion—applied. Specifically, the Bankruptcy Court concluded that the issues of

willfulness and malice were "actually litigated and necessarily determined" throughout the state proceedings, such that the Parties were precluded from relitigating those issues throughout bankruptcy proceedings. *In re Knochel*, 2023 WL 4306262, at *7. Indeed, the Bankruptcy Court explained that the elements of Ms. Ronan's ELCRA claim required her to prove that Dr. Knochel "inten[ded] to injure" her in a direct way. *Id.*

Second, in the alternative, even if the doctrine of collateral estoppel did not apply to preclude relitigation, the Bankruptcy Court reached the "separate and independent" conclusion that "Dr. Knochel willfully and maliciously injured Ms. Ronan, such that the resulting State Court Judgment is nondischargeable under Section 523(a)(6). *Id.* The Bankruptcy Court's finding of willfulness largely rested on the "substantial certainty" doctrine:

> As detailed, Dr. Knochel committed numerous acts, at least 15, that were substantially certain to injure Ms. Ronan. On numerous times, he was told by her to stop, but he continued. He did not do one or two acts; he did many even after Ms. Ronan requested that he stop. On many occasions, his acts caused Ms. Ronan to be distressed, anxious or apprehensive; on some she physically reacted. Ultimately, she quit her job and a jury determined her damages were $150,000. The Court cannot see a scenario where Dr. Knochel did not know the effect of his intentional acts, or where he was not substantially certain his acts caused harm or injury to Ms. Ronan. The Court has also separated each action and considered whether any one action, standing alone, evidences an intent to injure or harm Ms. Ronan. In some instances, the intent to injure or harm her is not facially evident. This analysis, however, ignores the cumulative effect any combination of acts had on Ms. Ronan. It also ignores the relentless acts of Dr. Knochel and completely discounts his knowledge or intent his acts would have on Ms. Ronan. This Court cannot draw the exact time line or point to the exact time when Dr. Knochel's actions met the standards required by Section 523(a)(6), but it can state that prior to the Atlanta trip, Dr. Knochel met the Section 523(a)(6) elements. Before that trip he was substantially certain that his actions caused harm to Ms. Ronan. But he still continued and persisted.

*Id.* at *8. And the Bankruptcy Court concluded Dr. Knochel's harassment was malicious because the record did not suggest any "just cause or excuse" for the harassment. *Id.* at *9 ("The Court has

searched long and hard to find . . . an acceptable reason for Dr. Knochel's actions[.] The Court has also speculated what Dr. Knochel's testimony could be to successfully defend this cause. While the Court could conjure an explanation for one or perhaps two acts, the litany of actions are too extensive, too numerous, and too flagrant[.]").

On July 26, 2023, Knochel filed a timely notice of appeal to this Court. ECF No. 1 at PageID.3.

## II.

The district court acts as an appellate court when reviewing the final decisions of the Bankruptcy Court. 28 U.S.C. § 158. District courts apply "the clearly erroneous standard of review" to the Bankruptcy Court's factual findings, and review *de novo* the Bankruptcy Court's legal conclusions. *In re Gardner*, 360 F.3d 551, 557 (6th Cir. 2004) (emphasis in original). "Where a bankruptcy court's determination involves a mixed question of fact and law, the district court 'must break it down into its constituent parts and apply the appropriate standard of review for each part.'" *In re A.O. Liquidating Co.*, 350 B.R. 752 (E.D. Mich. Sep. 29, 2006) (quoting *In re Baker & Getty Fin. Servs., Inc.*, 106 F.3d 1255, 1259 (6th Cir. 1997)).

The Bankruptcy Court's ultimate decision to grant summary judgment "presents purely a question of law," so it is reviewed *de novo* on appeal. *In re McDonald*, 29 F.4th 817, 822 (6th Cir. 2022). In bankruptcy proceedings, "the standard for summary judgment is governed by Federal Rule of Bankruptcy Procedure 7056, which incorporates" Civil Rule 56. *Id.* Under Civil Rule 56, summary judgment is warranted only when, construing the Bankruptcy Code in favor of the debtor, *In re Keeney*, 227 F.3d 679, 683 (6th Cir. 2000), there is "no genuine issue of material fact," such that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III.

Knochel raises two issues on appeal. First, did the Bankruptcy Court err in concluding the State Court Judgment—as affirmed by the Michigan Court of Appeals—precluded Knochel's discharge argument under the doctrine of collateral estoppel? Second, did the Bankruptcy Court err in concluding that Dr. Knochel willfully injured Ms. Ronan, such that the State Court Judgment is a nondischargeable debt? Each issue will be addressed in turn.

### A. Collateral Estoppel

The Bankruptcy Court did not err in concluding, as a threshold matter, that the doctrine of collateral estoppel precluded the Parties' relitigation of willfulness and malice.

### 1.

The doctrine of collateral estoppel—issue preclusion—applies in bankruptcy discharge proceedings. *Grogan v. Garner*, 498 U.S. 279, 284 n. 11 (1991); *In re Trantham*, 304 B.R. at 305; *see also In re Porter*, 539 F.3d 889, 894 (8th Cir. 2008) ("The collateral estoppel doctrine applies in bankruptcy proceedings brought under § 523(a)(6)."). And the preclusive effect of a state court judgment is governed by the "preclusion law of the State in which the judgment was rendered." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). Under applicable Michigan law, "[c]ollateral estoppel precludes [the] relitigation of an issue in a subsequent, different cause of action between the same parties where the prior proceeding culminated in a valid, final judgment and the issue was (1) actually litigated, and (2) necessarily determined. *People v. Gates*, 452 N.W.2d 627, 630 (Mich. 1990). "An issue is actually litigated if it is put into issue by the pleadings, submitted to the trier of fact, and determined by the trier of fact." *In re Markowitz*, 190 F.3d at 462 (citing *Latimer v. Mueller & Son, Inc.*, 386 N.W.2d 618, 627 (Mich.

Ct. App. 1986). And an issue is "necessarily determined if it is essential to the judgment." *Id.* (citing *Gates*, 452 N.W.2d at 631).

**2.**

All Parties agree that they participated in both the state sexual harassment and the federal bankruptcy proceedings. *See* ECF Nos. 5; 6. They also agree that the State Court Judgment— affirmed on appeal—was final and valid. *Id.* The only question, therefore, is whether the discrete issues of willfulness and malice were "actually litigated" and "necessarily determined" throughout the state court proceedings. The answer lies within the elements of Ms. Ronan's hostile workplace sexual harassment claim under the ELCRA, and her proofs at trial.

The jury found that Dr. Knochel and Family Chiropractic either "create[d] a sexually hostile, offensive, or intimidating work environment; or a hostile, offensive, or intimidating work environment based on gender." ECF No. 3 at PageID.54. As instructed by the 42nd Circuit Court, this verdict required the jury to find, among other ELCRA elements, that:

> (1) Ms. Ronan was subject to conduct or communication on the basis of sex;
> (2) the conduct or communication was unwelcomed or uninvited;
> (3) the unwelcome sexual conduct or communication *was intended to,* or in fact did, substantially interfere with Ms. Ronan's employment or created an intimidating, hostile, or offensive work environment[.]

*See Haynie v. State*, 664 N.W.2d 129, 133 (Mich. 2003) (emphasis added); ECF No. 3 at PageID.556–67. The jury was also instructed on intentionality:

> [Ms. Ronan] must prove that she was . . . discriminated against because of her sex. *The discrimination must have been intentional. It cannot have occurred by accident.* Intentional discrimination means that one of the motives or reasons for [Ms. Ronan's] harassment was her sex. [Ms. Ronan's] sex does not have to be the only reason, or even the main reason, but it does have to be one of the reasons which made a difference [for Dr. Knochel] in determining whether or not to harass [Ms. Ronan].

ECF No. 3 at PageID.561.

In this way, the issue of *willfulness*—for the purposes of Section 523(a)(6)—was actually litigated and necessarily determined in the state trial court. *See In re Porter*, 539 F.3d 889, 895 (8th Cir. 2008) (affirming Bankruptcy Court's holding that the state trial court's analogous sexual harassment judgment precluded relitigation of whether the defendant-debtor willfully caused the plaintiff-creditor injury for purposes of Section 523(a)(6) discharge). And "[a]lthough there is no *malice* requirement in the sexual harassment statute, malice is inherent" in the jury's finding that Dr. Knochel "was liable for sexual harassment" by "engaging in behavior that created an abusive working environment." *In re Jones*, 300 B.R. 133, 140 (B.A.P. 1st Cir. 2003) (analyzing the preclusive effect of a state judgment finding debtor liable for sexual harassment, under statutory elements identical to Michigan's ELCRA); *In re Smith*, 270 B.R. 544, 549 (Bankr. D. Mass. 2001) (same). Moreover, far from finding a just cause or excuse, the jury expressly found that Dr. Knochel's sexual conduct and communication was "unwelcome," meaning—as instructed by the 42nd Circuit Court—that the conduct was not "solicit[ed] or incite[d]" by Ms. Ronan. ECF No. 3 at PageID.563. Issue preclusion applies.

Dr. Knochel and Family Chiropractic—Appellants—assert two arguments to the contrary. The first lacks merit, and the second is unpersuasive. First, Appellants argue—without citing any legal authority—that collateral estoppel does not apply because the "standard for proving *willful and malicious injury* under [Section] 523(a)(6) is <u>much higher</u> than the standard for proving a claim of sexual harassment under the" ELCRA. ECF No. 5 at PageID.682 (emphasis in original). Not so. As discussed *supra* Section I.B, and as recognized by the Supreme Court, creditors must prove discharge exceptions under Section 523 of the Bankruptcy Code by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286–91 (1991). This is identical to the burden civil

plaintiffs bear when asserting a sexual harassment claim under the ELCRA. *Chambers v. Trettco, Inc*., 614 N.W.2d 910, 914 (Mich. 2000).

Second, Appellants cite *In re Busch*, 311 B.R. 657 (Bankr. N.D.N.Y. 2004) for the proposition that state sexual harassment judgments categorically cannot preclude the issue of willfulness in discharge proceedings because a sexual-harassment plaintiff need not prove that the defendant intended *to injure*, which Appellants view as necessary to exempt a debt from discharge under Section 523(a)(6). ECF No. 5 at PageID.680. But *In re Busch* is nonbinding, was decided over 20 years ago, and has been routinely criticized since. *See*, *e.g.*, *Supreme In re Spagnola*, 473 B.R. 518, 523 (Bankr. S.D.N.Y. 2012) (declining to follow *Busch* because it "pars[ed] [relevant Supreme Court precedent] too thin"); *In re Gilmore*, 590 B.R. 819, 838, n. 16 (Bankr. N.D. Ill. 2018); *In re Roth*, No. 11-34121 MER, 2014 WL 684630, at *6 (Bankr. D. Colo. Feb. 21, 2014). Moreover, *In re Busch* was predicated on the United States Bankruptcy Court for the Northern District of New York's then-rejection of the "substantial certainty" doctrine. *In re Busch*, 311 B.R. at 669–70 (rejecting as the "minority view" the idea that "a substantial certainty of harm can satisfy the willfulness requirement of § 523(a)(6)"). But that court adopted the substantial certainty doctrine ten years later. *In re Chaffee*, No. 07-11636, 2013 WL 4716320 (Bankr. N.D.N.Y. Sept. 3, 2013). And, more importantly, the Sixth Circuit incorporated substantial certainty within the Section 523(a)(6) willful analysis as early as 1999, and continues to recognize the doctrine today. *See, e.g.*, *In re Markowitz*, 190 F.3d at 464; *In re Kirvan*, No. 21-1250, 2021 WL 4963363 (6th Cir. Oct. 26, 2021); *In re Berge*, 953 F.3d at 915.

In sum, the Bankruptcy Court did not err in applying the doctrine of collateral estoppel and concluding that the state court verdict precluded the Parties' relitigation of willfulness and malice under Section 523(a)(6).

### B.  Section 523(a)(6) Discharge and Willfulness

But even if the Bankruptcy Court erroneously applied the doctrine of collateral estoppel as a threshold matter, its ultimate conclusion is unscathed because it correctly concluded that, independent from issue preclusion, Ms. Ronan sufficiently proved that the harassment she endured was willful and malicious. Importantly, Appellants do not contest the Bankruptcy Court's independent finding of *malice*—conceding that Dr. Knochel had no "just cause or excuse" for his actions. *See* ECF No. 5; *see also* ECF No. 6 at PageID.693, n. 1. The only issue is whether the Bankruptcy Court erred in concluding Ms. Ronan had proven her injury was *willful.*

As discussed *supra* Section I.B., a creditor can show that a debtor willfully inflicted injury under Section 523(a)(6) by proving—by a preponderance of the evidence—that either (1) the debtor subjectively desired to cause the injury, or (2) the injury was substantially certain to result from the debtor's intentional actions. *In re Kirvan*, 2021 WL 4963363, at *4 (citing *In re Markowitz*, 190 F.3d at 464). Ms. Ronan satisfied her burden under both theories.

### 1.

First, the record is flush with undisputed facts suggesting Dr. Knochel subjectively desired to discriminate against and harass Ms. Ronan on the basis of her sex and gender. Dr. Knochel's harassment was not isolated to one event or occasion. Instead, Dr. Knochel cultivated a sexually hostile work environment at Family Chiropractic through a year-long series of degrading and discriminatory comments and conduct directed almost exclusively at Ms. Ronan:[2]

---

[2] Although Dr. Knochel disputed these facts *at trial*, the jury found Ms. Ronan's testimony—and the testimony of her corroborating witnesses—more credible than Dr. Knochel's contrary version of events. Moreover, all Parties agreed, *on appeal*, that a similar factual summary was accurate. *In re Knochel*, No. 22-20911-DOB, 2023 WL 4306262, at *1, 6 (Bankr. E.D. Mich. June 30, 2023) ("Both parties agree that the Michigan Court of Appeal accurately stated the facts in its May 20, 2021 Opinion."). And these facts mirror those the Bankruptcy Court considered when analyzing the willfulness and maliciousness of Ms. Ronan's injury under Section 523(a)(6). *Id.* at *7–8; *see*

1. In December 2014, Dr. Knochel sent Ms. Ronan an unsolicited email—labeled "Important for Jule"—inviting her to a swingers' party. *See* ECF No. 3 at PageID.445.

2. Dr. Knochel made a series of harmful and degrading comments about Ms. Ronan's weight and mocked her physical appearance. For example, Dr. Knochel repeatedly told Ms. Ronan that she was fat. *Id.* at PageID.436. Dr. Knochel also rated Ms. Ronan's physical appearance on a scale of one to ten, and told her that, before she lost weight, she was a "two or three" but that, since she lost weight, she was a "five or six." *Id.* at PageID.438–39. Additionally, *knowing* Ms. Ronan was insecure about her arms after her weight loss, Dr. Knochel repeatedly flapped his arms at Ms. Ronan, imitating a bat, even after Ms. Ronan told him to stop. *Id.* at PageID.436–38

3. Dr. Knochel told Ms. Ronan that her pants were too tight and that she "had camel toe." *Id.* at PageID.441.

4. Dr. Knochel had sexual intercourse in his office while Ms. Ronan and other Family Chiropractic employees were present and could hear him. *Id.* at PageID.442.

5. Dr. Knochel frequently referred to women based solely on their physical appearance, describing potential employees as having "big boobs" or being "chubby" throughout the interview process. *Id.* at PageID.329–30, 439.

6. In January 2015, Dr. Knochel placed topless pictures of a woman he was dating on the home screen of Ms. Ronan's work computer. *Id.* at PageID.152–55, 451–52.

7. On July 23, 2015, Dr. Knochel placed a picture of a vagina on the home screen of Ms. Ronan's work computer. *Id.* at PageID.451, 458–59; *see also id.* at PageID.463–64 (describing the picture as depicting a "white discharge," indicative of gonorrhea).

8. Dr. Knochel often "joked" about not wearing underwear to work and told his staff—comprised entirely of women—that he needed "to give his balls room to breathe." *See id.* at PageID.111–12, 454.

9. Dr. Knochel split the back seam of his pants and insisted—after Ms. Ronan refused—that she staple the seam while he was still wearing the pants and his "butt cheeks were exposed." *Id.* at PageID.454–55.

---

*also id.* at *8, n. 2 ("There is no doubt in the [Bankruptcy] Court's view that these events occurred."). Far from clearly erroneous, the Bankruptcy Court's findings of fact are thoroughly supported by the record upon this Court's independent review. *See In re Gardner*, 360 F.3d 551, 557 (6th Cir. 2004).

10.  Dr. Knochel insisted—after Ms. Ronan refused—that she call a patient who worked at the local health department and ask the patient to deliver condoms for Dr. Knochel. *Id.* at PageID.455–56. When the patient arrived with the condoms, Dr. Knochel said that the "small ones weren't gonna fit." *Id.* at PageID.456.

11. Dr. Knochel asked Ms. Ronan to pull his arm and stretch it. *Id.* at PageID.456–57. After Ms. Ronan initially agreed, Dr. Knochel asked Ms. Ronan to "do his back and go lower down." *Id.* at PageID.457. Ms. Ronan expressly told him she would not massage him, that "it wasn't appropriate," and that she "didn't want to touch him." *Id.*  But Dr. Knochel "grabbed" Ms. Ronan's rolling desk chair and "rolled [her] into" the massage room. *Id.* at PageID.458.

12. In February 2016, Dr. Knochel required Ms. Ronan to attend a conference in Atlanta, Georgia, despite her objections and family commitments. *See id.* at PageID.466. Ms. Ronan told Dr. Knochel she was uncomfortable sharing a room with him at the conference. *Id.* at PageID.467. Ms. Ronan's then-husband and aunt spoke with Dr. Knochel, who assured them that he and Ms. Ronan would have separate rooms. *Id.* at PageID.467–69. But, when the two arrived at the hotel, Ms. Ronan discovered Dr. Knochel had only reserved one room. *Id.* at PageID.469. Ms. Ronan immediately left for the lobby to check in for the conference and see if any other rooms were available. *Id.* at PageID.470. Ms. Ronan briefly returned to the room, gave Dr. Knochel his conference paperwork, and then left for the conference by herself. *Id.* During a break, Ms. Ronan returned to the room and discovered Dr. Knochel sleeping on the bed with his shirt off and pants "undone." *Id.* at PageID.471. He also appeared to not "have any underwear on." *Id.* Ms. Ronan screamed at him to wake up. *Id.* In response, Dr. Knochel called Ms. Ronan a "stupid fucking cunt" and said he "was paying [her] for the weekend so [she] was gonna do whatever he told [her] to do." *Id.*

These facts leave little room for doubt as to Dr. Knochel's subjective intent. The Sixth Circuit recently recognized the common-sense proposition that, because a debtor is unlikely to readily admit their injurious intent or willfulness, "intent may be inferred from the circumstances of the injury." *In re Berge*, 953 F.3d at 915. The circumstances of Dr. Knochel's year-long sexual harassment spree do not infer anything *other* than his subjective desire to harass and injure Ms. Ronan. But don't take the Bankruptcy Court or this Court's word for it; listen to Dr. Knochel himself. At trial, Dr. Knochel agreed that *if* he acted as described above—and as the jury, Michigan

- 17 -

Court of Appeals, and Bankruptcy Court found—he did so intentionally to harass and intimidate Ms. Ronan. *See*, *e.g.*, ECF No. 3 at PageID.166–67 (agreeing that—if he left pornographic pictures on Ms. Ronan's computer, invited her to a swingers party, and had sex in the office—he would have sexually harassed Ms. Ronan with the intent to "embarrass or humiliate" her); PageID.195 (agreeing that—if he called Ms. Ronan a "cunt" at the Atlanta conference—such comment would be "gender-based hostility" and "meant to intimidate or at least offend" Ms. Ronan).

The material facts are not disputed. Ms. Ronan satisfied her burden in proving—by a preponderance of the evidence—that Dr. Knochel subjectively desired to harass her, such that this injury was "willful" for the purposes of the discharge exception codified in Section 523(a)(6).

### 2.

But this is not the only way Ms. Ronan satisfied the "willfulness" inquiry. The harassment Ms. Ronan endured was also willful because Dr. Knochel intentionally *acted*, and the harassment that resulted was "*substantially certain*" to occur. *See In re Kirvan*, 2021 WL 4963363, at *4.

The Sixth Circuit has recognized that the "substantial certainty" doctrine is "more complicated" than proving a debtor's subjective intent to injure. *In re Boland*, 946 F.3d 335, 338 (6th Cir. 2020). When a "debtor . . . act[s] intentionally but simply [does] not know that the act will cause injury," the creditor must show "that the debtor knew injury would result from his actions[.]" *Id.* But, importantly, the "law will sometimes *presume*" that an injury is "substantially certain" to occur when a debtor intentionally acts. *Id.*; *see also In re Berge*, 953 F.3d at 920 ("Intent to injure for purposes of § 523(a)(6) can sometimes be inferred from a knowing act."). Although the contours of this presumption are somewhat unclear, Sixth Circuit precedent provides helpful guiderails.

The Sixth Circuit has presumed a substantially certain injury in at least three cases. First, in *In re Kennedy*, debtors filed for Chapter 7 bankruptcy after a Michigan state court found them liable for defaming creditors through a series of false statements about the creditors' paternity. *In re Kennedy*, 249 F.3d 576, 577 (6th Cir. 2001). The creditors filed adverse proceedings, seeking an order that their state court judgment was nondischargeable under Section 523(a)(6). *Id.* The bankruptcy court granted the creditors summary judgment, holding that the defamation was both willful and malicious for the purposes of this discharge exception, and both the district court and the Sixth Circuit affirmed on appeal. *See generally id.* The Sixth Circuit noted that the debtor's intentional statements were "substantially certain to cause harm for the purposes of § 523(a)(6)" because false statements imputing a lack of chastity are "defamation *per se*" and are, thus, "injurious by their nature." *Id.* at 582. So, the Sixth Circuit explained, it was appropriate to presume that the debtors were substantially certain that their knowingly false, defamatory statements would injure the creditors. *Id.* at 583.

In the 2018 case *In re Trost*, the state court found the debtor liable for breach of contract and conversion after the debtor took his stepmother's land and assets with promises to pay off debts, but never paid off the debts as promised and never returned the property. *In re Trost*, 735 F. App'x 875, 876–77 (6th Cir. 2018). The debtor filed for Chapter 7 bankruptcy and his step-mother, the creditor, sought to exempt the state judgment from discharge under Section 523(a)(6), arguing her stepson maliciously and willfully converted her property. *Id.* The Sixth Circuit agreed, finding that the debtor willfully injured her because he knew the property belonged to her, but his year-long "pattern of conduct" in refusing to return the property "could only lead to one result," such that conversion was "entirely foreseeable and substantially certain to occur." *Id.* at 882 (internal quotations omitted).

And, most recently, the Sixth Circuit applied the "substantial certainty" presumption in a 2020 child pornography case. In *In re Boland*, the debtor created doctored depictions of child pornography for use as exhibits throughout criminal child pornography trials, to assist criminal defendants in proffering reasonable doubt that the images of child pornography *they* possessed were doctored, too. *In re Boland*, 946 F.3d at 337. But the children the debtor used in his doctored depictions were real, and their parents sued under the civil-remedy provision of the federal child pornography statute, securing a $300,000 judgment. *Id.* at 337–38. The debtor filed for Chapter 7 bankruptcy, and the parents of his victims filed adversarial proceedings to exempt the judgment from discharge under Section 523(a)(6). *Id.* at 338. The bankruptcy court found for the debtor, and held the judgment was dischargeable, but the Bankruptcy Appellate Panel reversed, and both sides appealed to the Sixth Circuit. *Id.* at 340. The Sixth Circuit concluded the judgment was nondischargeable and that the debtor willfully injured the two minor victims. *Id.* at 341–42. Over the debtor's argument that he created the images for educational purposes, the Sixth Circuit held that the injury was substantially certain to occur, in part because the law presumes that acts which harm a child's reputation, emotional wellbeing, and privacy *inherently* cause injury. *Id.* at 342.

Juxtaposed to *Kennedy*, *Trost*, and *Boland*, the Sixth Circuit declined to apply the substantial certainty presumption in the 2012 case *In Re Brown*. In that case, the debtor was a logger who contracted with two property owners to cut trees on land the property owners purported to own. *Id.* at 892. But, unbeknownst to the debtor, the trees he cut were owned by a third-party company, which sued the debtor and the two property owners in state court. *Id.* The state court issued a judgment against the debtor in the property owners' favor and, when the debtor filed Chapter 7 bankruptcy proceedings, the two property owners filed an adversarial complaint seeking an order that the judgment was nondischargeable under Section 523(a)(6). *Id.* at 893. But the Sixth

Circuit held that the judgment was dischargeable because the debtor—who did not know the third-party company owned the trees—could not have subjectively intended to injure the two property owners, and it was far from certain—from the debtor's perspective—that the property owners would be subject to monetary liability from the debtor's logging. *Id.* at 896.

Although the Sixth Circuit has not squarely addressed substantial certainty in the context of sexual harassment, other federal appellate, bankruptcy, and district courts that have largely concluded "willfulness" is satisfied because harassment is substantially certain to occur from a debtor's intentional, sexually hostile conduct directed squarely at the creditor. *See, e.g.*, *Townsend v. Ganci*, 566 B.R. 129, 135 (E.D.N.Y. 2017), *aff'd sub nom. In re Townsend*, 726 F. App'x 91 (2d Cir. 2018) ("The creation of a workplace environment permeated with intimidation . . . based on behavior that was inappropriate and offensive satisfies this standard." (internal quotations omitted)); *In re Smith*, 270 B.R. 544, 549 (Bankr. D. Mass. 2001) (finding willfulness because the "[d]ebtor . . . knew the consequences" of his actions in creating a sexually hostile work environment); *In re Porter*, 363 B.R. 78, 89 (Bankr. E.D. Ark.), *aff'd, appeal dismissed*, 375 B.R. 822 (B.A.P. 8th Cir. 2007), *aff'd*, 539 F.3d 889 (8th Cir. 2008) (finding that debtor's sexual harassment and retaliation could not plausibly be attributed to "benign or reckless intent"); *In re Je Hyeon Lee*, No. 2:13-AP-01420 RK, 2015 WL 1299747, at *10 (Bankr. C.D. Cal. Mar. 19, 2015) (finding sexual harassment was substantially certain to occur as a result of debtor's intentional pattern of unwanted physical and verbal acts of harassment—including the exposure of his private parts); *In re Roth*, No. 11-34121 MER, 2014 WL 684630, at *6 (Bankr. D. Colo. Feb. 21, 2014).

Applying this precedent to the facts of this case, it can be safely concluded that the sexual harassment Ms. Ronan endured was substantially certain to occur as a result of Dr. Knochel's

undisputedly intentional actions. Like in *In re Kenedy* (chastity defamation) and *In re Boland* (creation of child pornography), this Court cannot separate Dr. Knochel's intentional sexually hostile comments and conduct from the resulting harassment. *See In re Boland* 946 F.3d at 342 ("The act itself is the injury."). Like the debtor in *In re Trost*, Dr. Knochel engaged in a year-long "pattern of conduct" that he knew was offensive. And, unlike the creditors in *In re Brown*, the injury Ms. Ronan endured was directly attributable to Dr. Knochel's intentional conduct, rather than the independent actions of unknown third parties.

Despite the significant ink spilled on substantial certainty, the conclusion this court reaches is rather unremarkable: a woman is substantially certain to be sexually harassed when her male employer intentionally makes repetitive, explicit comments about her weight and physical appearance; makes inappropriate comments about the size of his penis and whether he wears undergarments; asks her to ensure condoms are delivered to the work place; invites her to a sexual "swingers" party; places pornographic images on her work computer on at least two occasions; has sex in the office during business hours in earshot of his employees; insists that she massage him after she refuses; and coerces her into attending an out-of-state conference while concealing the fact that, over her express objection, he only reserved one hotel room, where he later exposed himself.

In sum, Dr. Knochel willfully injured Ms. Ronan because, as shown by a preponderance of the evidence, he subjectively desired to harass and intimidate her and because the harassment she endured was substantially certain to result from his undisputedly intentional conduct. Thus, the Bankruptcy Court did not err when it held, independent of issue preclusion, that the State Court Judgment is exempt from discharge under Section 523(a)(6).

**IV.**

Accordingly, it is **ORDERED** that the Bankruptcy Court's June 30, 2023 Opinion, *In re Knochel*, No. 22-20911-DOB, 2023 WL 4306262 (Bankr. E.D. Mich. June 30, 2023) is **AFFIRMED.**

Dated: December 3, 2024                              s/Thomas L. Ludington
                                                    THOMAS L. LUDINGTON
                                                    United States District Judge